IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| KENNETH W. HARRY,<br><br>    Petitioner,<br><br>vs.<br><br>CRAIG TURNBULL, Commissioner,<br>Alaska Department of Corrections,<br><br>    Respondent. | No. 3:11-cv-00033-JKS<br><br>MEMORANDUM DECISION<br>and<br>ORDER [Re: Motions at<br>Docket Nos. 55 and 73] |
|---|---|

   Kenneth W. Harry, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Harry is currently in the custody of the Alaska Department of Corrections, incarcerated at the Hudson Correctional Facility, Hudson, Colorado. Respondent has answered. Harry has replied. At Docket No. 55 Harry filed a Motion for Partial Summary Judgment. Respondent has opposed the motion, and Harry has replied. At Docket No. 73, Harry filed a Motion for Oral Argument.

## I. BACKGROUND/PRIOR PROCEEDINGS

   Following a jury trial, in January 2007 Harry was convicted in the Alaska Superior Court, Third Judicial District at Anchorage, of Sexual Assault in the First Degree (AS § 11.41.410(a)(1)) and Assault in the Fourth Degree (AS § 11.41.230(a)(1)). The trial court sentenced Harry to a determinate prison term of ten years on the first-degree sexual assault charge and a concurrent term of one year on the forth-degree sexual assault charge. The Alaska

Court of Appeals upheld Harry's conviction and sentence in an unpublished decision,[1] and the Alaska Supreme Court denied review on July 9, 2010. Harry timely filed his Petition for relief in this Court on March 3, 2011.

The facts underlying Harry's conviction, as recited by the Alaska Court of Appeals:

> Harry and D.H. were in a dating relationship from July through October of 2005. The relationship ended in October after Harry beat D.H. so severely that she temporarily lost the vision in her left eye. On the morning of January 29, 2006, Harry came to D.H.'s trailer, where she was entertaining three of her friends. D.H. told Harry that she was not in the mood for visitors, but Harry replied that he just needed to talk to her for a minute. D.H. followed Harry to the back bedroom, where Harry eventually asked D.H. for drugs. D.H. responded that she had only one rock of crack cocaine, which she was saving, but after arguing with Harry, she threw the cocaine at him and walked out of the bedroom.
> Harry became angry, telling D.H. to "get [her] ass back" in the room and to sit down on the bed. Harry then came back into the living area, struck D.H. across her collarbone, and knocked her off of her feet. Harry tried to pull D.H. back to the bedroom by the hair and kicked her in the leg several times with his steel-toed boot. When D.H. stood up, Harry grabbed her arm and led her back to the bedroom.
> Harry ordered D.H. to stand in front of him where he was sitting on the bed, and then he removed her underwear. D.H. testified that she was crying and in a lot of pain, and that she told Harry she was "really not in the mood for this." Harry told D.H. that he was not asking and then he guided her down on top of him. D.H. testified that she was crying and immobile and she said to Harry "is this really how you want this?"
> D.H. testified that she told Harry "no" several times, and that he asked her at one point if she wanted him to stop, and she said "yeah." After completing the sexual encounter, Harry directed D.H. not to "screw up," which she interpreted as a warning against calling the police.
> D.H. was eventually able to leave the trailer. D.H.'s mother picked her up at a nearby convenience store, and convinced her to report the incident to the police. The nurse who later examined D.H. reported "bruising throughout her body, on her neck, on her arms and on her legs," and that she had lacerations on her external genitals which the nurse found to be consistent with D.H.'s account of being sexually assaulted.[2]

---

[1] *Harry v. State*, A-9856, 2010 WL 668930 (Alaska Ct. App. Feb. 24, 2010).

[2] *Id.* at *1-2.

## II. GROUNDS RAISED/DEFENSES

In his Amended Petition, Harry raises four grounds: (1) his conviction for first-degree sexual assault is unsupported by sufficient evidence; (2) the first-degree sexual assault statute is unconstitutionally vague and unconstitutional as applied; (3) the prosecutor was permitted to narrow the facts of the indictment as they were presented to the grand jury, a *sua sponte* adoption of a new theory of, post-conviction, and improper jury instructions; and (4) prosecutorial misconduct. Respondent contends that Harry's third ground is partially unexhausted and his fourth ground is procedurally barred. Respondent raises no other affirmative defense.[3]

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[3] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

3

power of the Supreme Court over federal courts.[6] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[8] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[9] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11] Because state court judgments of

---

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

4

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[14] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[15] This Court gives

---

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[15] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an

(continued...)

the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.

IV. DISCUSSION

A. **Oral Argument**

Harry has requested oral argument, contending that the instant Petition involves intricate and intertwined issues of constitutional law. While Harry has indeed spun an intricate web of alleged constitutional violations, as discussed below on the merits, in the context of a federal habeas proceeding those arguments are beyond the purview of the court. Accordingly, the Motion for Oral Argument at Docket No. 73 will be denied and the matter will be submitted for decision on the Amended Petition, Answer, and Reply.

B. **Sufficiency of the Petition**

In the third and fourth grounds of his Petition, Harry simply describes in conclusory terms his grounds without setting forth the factual basis for those conclusions. The petition must specify all the grounds for relief available to the petitioner *and the facts supporting each ground*.[16] As the Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding [than the rules governing pleading in civil cases]. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *See also* Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28

---

[15](...continued)
unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[16] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c)(2012).

U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)). Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

> "**CAUTION: You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**" Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).[17]

Although this Court may dismiss the third and fourth grounds on this basis *sua sponte* notwithstanding that an answer has been ordered and filed,[18] the Court will nonetheless address those grounds to the extent that it appears from the Traverse that Harry has provided a sufficient factual basis in support of those grounds. To the extent that the Traverse does not provide a sufficient factual basis for either the third or fourth ground, this Court will not address the conclusory allegation on the merits.

---

[17] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

[18] *See Day v. McDonough*, 547 U.S. 198, 206-09 (2006) (the Court noted that, although the question remains open in the Supreme Court, the Circuit Courts have unanimously held that, in appropriate circumstances, the court could raise defenses, e.g., procedural default, statute of limitations, exhaustion, and retroactivity, *sua sponte*); *see also Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003) (a district court may raise procedural default *sua sponte*).

**C.     Merits**

Ground 1:  Insufficiency of the Evidence

Harry argues that because there was no evidence of forceful coercion, his conviction of Sexual Assault in the First Degree was unsupported by the evidence.  The Alaska Court of Appeals rejected Harry's arguments, holding:

> The crime of sexual assault in the first degree consists of three elements: (1) the offender knowingly engaged in sexual penetration with another person; (2) the sexual penetration occurred without the consent of the other person; and (3) the defendant acted recklessly with regard to the other person's lack of consent.
> At trial, D.H. testified that Harry and D.H.'s relationship had been marked by domestic violence.  D.H. explained that she wanted Harry to leave her trailer that night, but she felt she only had the choice of "having the crap beat out of [her] or letting him stay."  D.H. told Harry that she did not want to have sex with him, but he told her that he was not asking for her permission, and forced her to engage in sexual intercourse.  D.H. testified that she cried throughout their encounter and told Harry "no" several times.  This testimony, if believed, would establish that Harry engaged in sexual penetration of D.H. without her consent, and that he was at least reckless with regard to D.H.'s lack of consent.  Viewed in the light most favorable to upholding the jury's verdict, this evidence was sufficient to support Harry's conviction for first-degree sexual assault.[19]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[20]  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[21]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it

---

[19] *Harry*, 2010 WL 668930 at *2.

[20] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[21] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

must undertake its inquiry by reference to the elements of the crime as set forth in state law.[22] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[23] A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[24] This is especially true where the highest court in the state has denied review of the lower court's decision.[25]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[26] "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[27] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[28] "Federal courts hold no supervisory

---

[22] *Jackson*, 443 U.S. at 324 n.16.

[23] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[24] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference).

[25] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[26] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[27] *Swarthout v. Cooke*, 131 S. Ct. 860, 863 (2011) (internal quotation marks and citations omitted).

[28] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[29]

The statute at issue here, AS § 11.41.410(a)(1), states that "[a]n offender commits the crime of sexual assault in the first degree if [¶] (1) the offender engages in sexual penetration with another without consent of that person . . . ." Reduced to its essence, Harry's argument is that in order for there to be a lack of consent, the sexual assault must be coerced by the use or threat of force. In support of this argument, Harry cites AS § 11.41.470(8), which states that "[f]or the purposes of AS 11.41.410 - 11.41.470, unless the context requires otherwise, [¶] (8) 'without consent' means that a person [¶] (A) with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of death, imminent physical injury, or kidnapping to be inflicted on anyone; or [¶] (B) is incapacitated as a result of the act of the defendant."

The insurmountable hurdle that Harry faces in this Court is that his argument is based upon an alleged misinterpretation or misapplication of state law. It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[30] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the

---

[29] *Smith v. Phillips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[30] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

crime as set forth in state law.[31] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[32] A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[33] This is especially true where, as here, the highest court in the state has denied review of the lower court's decision.[34]

In this case, even if there was a lack of consent as defined in § 11.41.470(8),[35] the Alaska Court of Appeals held that under Alaska law it was not necessary to show coercion by force or the threat of force to convict on a charge of first-degree sexual assault. That, as far as this Court in a federal habeas petition is concerned, ends the matter. Having failed to raise an issue of constitutional dimension, Harry has is not entitled to relief under his first ground.

---

[31] *Jackson*, 443 U.S. at 324 n.16.

[32] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[33] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference).

[34] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[35] An argument that is belied by the testimony of the victim, D.H., that Harry had, in fact, not only physically assaulted her in the past, but he physically assaulted her immediately preceding the sexual act in this case. This was, in itself, sufficient to support a finding that the sexual assault was coerced by either the actual use of force, or an actual or implied threat of imminent physical injury if D.H. did not submit.

Ground 2: AS § 11.41.410(a)(1) Unconstitutionally Vague

Harry contends that, because § 11.41.410(a) does not proscribe any conduct other than the legal act of sex, it is insufficient to inform the public, or a person of normal intelligence what conduct is proscribed, and therefore, is unconstitutionally vague as applied and void.[36] In his Traverse Harry argues that § 11.41.410(a) permits conviction upon either a showing of forced coercion or a reckless disregard of lack of consent. Therefore, according to Harry, a defendant may be convicted based upon an ambiguity or dual meaning. More specifically, Harry argues that the perceived vagueness has permitted arbitrary enforcement and allowed him to be convicted without a finding of force. The Alaska Court of Appeals disagreed, holding:

> Harry argues that the Alaska first-degree sexual assault statute is unconstitutionally vague and therefore void. In *Reynolds v. State,* this court rejected a similar constitutional challenge. Reynolds argued, as does Harry, that the sexual assault statute was unconstitutionally vague because reasonable people could reach different conclusions about the required mens rea. We noted that the statute increased the risk of conviction in ambiguous circumstances by eliminating the requirement that the State prove resistance. But we concluded that the legislature sufficiently "counteracted this risk":
>> [T]o prove a violation of AS 11.41.410(a)(1), the state must prove that the defendant knowingly engaged in sexual intercourse and recklessly disregarded his victim's lack of consent. Construed in this way, the statute does not punish harmless conduct and is neither vague nor overbroad.
>
> Harry has not convinced us to depart from our previous decision on this issue, and we therefore again hold that the first-degree sexual assault statute is not unconstitutionally vague.[37]

Harry's argument on this ground is a variation of his first ground, i.e., § 11.41.410(a) as defined in *Reynolds*, permits a conviction based upon the lack of coercion, physical threat, or

---

[36] In support of his argument, Harry cites *Connally v. General Const. Co.*, 269 U.S. 385, 391-92 (1926).

[37] *Harry*, 2010 WL 668930 at *2 (internal footnotes omitted).

12

force. Harry's reliance on *Connally* is misplaced. As explained in *Bouie*, in *Connally* the uncertainty in the statute's meaning was not revealed until the court's decision in that case.[38] In this case, however, any ambiguity or vagueness was cured by the judicial limitation placed upon the scope of § 11.41.410(a)(1) in *Reynolds*, twenty-five years prior to the time of Harry's conduct. As the Alaska Court of Appeals noted, *Reynolds* more clearly defined the scope of "without consent." Thus, at the time of Harry's conduct, judicial gloss had supplied the requisite level of certainty.[39] Contrary to Harry's argument, the fact that the jury may find the requisite *mens rea* from alternative means renders a statute void or ambiguous, also fails.[40]

Harry's alternative argument, that *Reynolds* took the term "without consent" within its literal ambit, without including the definition contained in § 11.41.470(8), somehow made the statute unconstitutionally vague also fails. Under the generally applicable rules of statutory construction, unless a statute provides a specific definition, it is normally construed in accord with its ordinary or natural meaning.[41] Harry does not appear to argue that the term "without consent" in § 11.41.410(a)(2) is being applied either facially or as applied in a manner other than in accord with its ordinary meaning. Instead, Harry argues that the Alaska courts erred in not limiting "without consent" to the definition contained in § 11.41.470(8). This argument also

---

[38] *Bouie v. City of Columbia*, 378 U.S. 347, 352-53 (1964).

[39] *See United States v. Lanier*, 520 U.S. 259, 266 (1997) (noting that clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute (citing *Bouie*, 378 U.S. at 357-59; *Kolender v. Lawson*, 461 U.S. 352, 355-56 (1983))).

[40] *See Schad v. Arizona*, 501 U.S. 624, 632 (1991).

[41] *See Smith v. United States*, 508 U.S. 223, 228 (1993).

fails.³⁹ Although the decision of the Alaska Court of Appeals in this case may run afoul of a general rule of statutory interpretation, it does not raise a question of constitutional dimension. Harry is not entitled to relief under his second ground.

Ground 3: Trial Errors

In his third ground Harry raises three trial errors: (1) the prosecution was permitted to narrow the facts in the indictment; (2) the trial court *sua sponte* adopted a new theory post-verdict that permitted upholding the verdict on a theory disavowed by the prosecution; and (3) improper jury instructions that permitted a conviction without proving forced coercion. The Respondent contends that Harry did not exhaust his first and second claims by presenting his claims to the Alaska Court of Appeals.

This Court may not consider claims that have not been fairly presented to the state courts.⁴⁰ Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.⁴¹ A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper

---

³⁹ This Court agrees with Harry that the recent unpublished decision of the Alaska Court of Appeals, *State v. Townsend*, No. A-10502, 2011 WL 4107008 (Alaska Ct. App. 2011), construing the identical language in the statute on second-degree sexual assault (AS § 11.41.420(a)(1)), supports his position. Unfortunately for Harry, however, *Townsend*, an unpublished decision, does not create legal precedent. Guidelines for Publication of Court of Appeals Decisions, ¶ 7. In addition, although *Townsend* reflects a possible disagreement in interpreting state law, because the case with which it possibly disagrees is a published decision, it is even improper to cite *Townsend* for its persuasive value. *See* Alaska App. R. 214(d)(1).

⁴⁰ 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

⁴¹ *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim.[42]

*Point 1 – Impermissible Narrowing of the Indictment*

In his Traverse Harry withdrew this claim. Accordingly, the Court need not address it.

*Point 2 – Post-trial Adoption of New Theory*

Prior to trial the question of the scope of the testimony of an expert witness proposed to be called by the state was presented to the trial court. The prosecutor stated: "I have no grounds to say I'm going to call her as an expert to talk about the psychology of domestic violence."[43] At the time of sentencing, the trial court inquired why the fourth-degree assault charge did not merge into the first-degree sexual assault charge:

> COURT: Because the state's argument both at trial and then, again, you repeated it here at sentencing that was that the assault that occurred prior to the sexual assault was actually part of the course of tools, if you will, used by the defendant. Why wouldn't that Assault IV charge merge into the offense of sexual assault?
> MS. WHITE: Your Honor, it's my position that it's both. There was a clear Assault IV without a rape in the living room, but the psychological impact of that assault that occurred in the living room caused Ms. Hopkins to say that, you know, when someone has a hold of your arm, there isn't much of a decision. That was what she said in reference to going down the hallway.
> So, its my position, it's both a separate assault that happened in the living room, yet the psychological impact of that assault made Ms. Hopkins afraid that he was going to continue to hit her.[44]

---

[42] *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009).

[43] Docket No. 57-6 at 6 [Reporter's Transcript at 149].

[44] Docket No. 57-16 at 3 [Reporter's Transcript at 1126].

Harry argues that the prosecutor's argument at sentencing resurrected a psychological impact theory that had been expressly rejected prior to trial. Harry did not raise this issue on appeal. Thus, it is unexhausted and must be dismissed.

Even if this Court were to reach the merits, Harry would not prevail. Pretrial, the prosecutor made clear she was not going to call the expert for the purpose of introducing testimony on the psychology of domestic violence. At sentencing, the prosecutor used the immediately preceding physical assault as providing the necessary element for establishing the requisite fear of continued assault if D.H. did not succumb to sex. The fact the prosecution did not rely on the testimony of an expect on the psychology of domestic violence, did not constitute an abandonment of the effect of an immediately preceding act of violence, which need not be domestic, on whether a person's consent was voluntarily given or coerced. Whether the assault in the livingroom created a fear of continued assault after moving to the bedroom if D.H. did not submit to sex with Harry was clearly a question of fact for the jury to find that required no expert testimony. Indeed, contrary to Harry's arguments, D.H. testified that she feared a continued assault if she did not submit.

*Point 3 – Improper Jury Instructions*

Although it is somewhat difficult to follow, it appears that Harry is arguing in his Petition to this Court that Jury Instruction No. 12 on Sexual assault in the first degree is improper. Jury Instruction No. 12 delineates four elements as necessary to be proven beyond a reasonable doubt: "First, the event in question occurred at or near Anchorage and on or about January 29, 2006; [¶] Second, that [Harry] knowingly engaged in sexual penetration with D.H.; [¶] Third, D.H. did not consent to the sexual penetration; and [¶] Fourth, that [Harry] recklessly disregarded D.H..'s [*sic*]

lack of consent."⁴⁵ Harry argues that the failure of the instruction to include a requirement of "forced coercion" renders the instruction improper.

Although Harry challenged the jury instructions on direct appeal, he did so on different bases, all of which the Alaska Court of Appeals rejected. First, Harry argued that Jury Instruction No. 12, defining the elements of first-degree sexual assault, allowed the jury to presume that an element of the crime of first-degree assault was present.⁴⁶ Second, Harry argued that the trial court erred in not giving an instruction that fourth-degree assault was a lesser-included offense of first-degree sexual assault.⁴⁷ Finally, Harry argued that Jury Instruction 13, defining the elements of assault in the fourth degree, subjected him to double jeopardy by allowing him to be convicted of both the charge of sexual assault in the first degree and assault in the fourth degree.⁴⁸ Harry does not raise any of these issues in his Petition to this Court.

Although Respondent has not raised as a defense the failure to exhaust state-court remedies as to this claim,⁴⁹ it has likely not been waived.⁵⁰ This Court may deny a habeas claim on the merits, the failure to exhaust notwithstanding,⁵¹ when it is clear that the petition does not

---

⁴⁵ Docket No. 57-23 at 16.

⁴⁶ *Harry*, 2010 WL 668930 at *3.

⁴⁷ *Id.*

⁴⁸ *Id.* at *4.

⁴⁹ 28 U.S.C. § 2254(b)(1); Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

⁵⁰ 28 U.S.C. § 2254(b)(3) ("[A] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement, unless the State, through counsel, expressly waives the requirement."); *but see Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003) (a failure to raise an affirmative defense constitutes a waiver)..

⁵¹ 28 U.S.C. § 2254(b)(2).

raise a colorable federal claim.[52] As explained above with respect to Harry's first ground, because the elements of a crime are solely within the province of state law, Harry does not raise an issue of constitutional dimension cognizable in this Court. Harry is not entitled to relief under his third ground.

### Ground 4: Prosecutorial Misconduct

Harry contends that in two separate instances the prosecutor presented false evidence to the grand jury and the court, failed to impeach a prosecution witness, and used duplicity to support the first-degree sexual assault conviction. Respondent contends that Harry's fourth ground is procedurally barred. The Respondent, however, only addresses the duplicity claim, arguing that Harry abandoned it on appeal. This Court agrees with Harry that, although he may have withdrawn the claim, he reasserted it at oral argument and the Alaska Court of Appeals addressed it on the merits. Accordingly, Harry is not procedurally barred from raising it before this Court.

> In his opening brief, Harry argues that the separate charges for sexual assault in the first degree and assault in the fourth degree violate the rule against duplicitous charges. In his reply brief, Harry states that he was "wrong" to make this argument, but then he raised the issue again during oral argument. We conclude that Harry's conduct could legally support these separate charges.[53]

Harry's claims of prosecutorial misconduct, i.e., that the prosecutor presented falsities on two occasions and did not impeach a witness, were not clearly raised as such in his direct appeal. Consequently, Harry has not exhausted his state-court remedies with respect those claims.

---

[52] *Cassett v. Stewart,* 406 F.3d 614, 624 (9th Cir.2005); *see Rhines v. Weber*, 544 U.S. 269, 277 (2005) ("plainly meritless").

[53] *Harry*, 2010 WL 668930 at *4.

However, as noted above, because these claims are clearly meritless, the Court will nonetheless address and deny them.

Harry claims that the prosecutor presented false evidence to the grand jury and the trial court concerning the charge of fourth-degree assault and then did not correct it even though she knew it was false. In neither his Petition nor his Traverse, does Harry identify the false evidence. As presented in his Traverse, however, it appears that Harry's argument on this point is based upon his arguments that his conviction for both first-degree sexual assault and fourth-degree assault was improper, i.e., that the fourth-degree assault charge was a necessarily lesser-included offense and the prosecutor improperly relied on the assault in the living room to establish a lack of consent to the sex that occurred immediately thereafter in the bedroom. This claim, as well as his "duplicity" claim, fails for the same reasons that those claims failed.

As to Harry's failure to impeach a witness claim, Harry contends that the prosecutor did not impeach her star witness (presumably D.H.) with inconsistencies between the testimony before the grand jury and at trial. Harry does not provide any factual basis for this allegation, i.e., he does not identify what testimony D.H. gave to the grand jury and how that differed from her testimony at trial. Thus, this claim must be dismissed as unsupported by any factual allegations. Harry is not entitled to relief under his fourth ground.

## V. CONCLUSION AND ORDER

Harry is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion for Partial Summary Judgment at Docket No. 55 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion for Oral Argument at Docket No. 73 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[54] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[55]

The Clerk of the Court is to enter judgment accordingly.

Dated: August 14, 2012.

/s/ James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
United States District Judge

---

[54] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 325, 327 (2003))).

[55] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.